311 and 231, people of the state of Illinois, after me, by John Delphi v. Marcus v. Northern, and followed by Mark Fisher. Mr. Fisher, before we get started, Mr. Fisher, I want to advise people, if you haven't heard before, that Justice Holdridge is also sitting on this case for some very personal reasons. He cannot be here today, but he will listen to the recordings, to the tapes, and will participate fully with us and be engaged as we are. You may begin. Thank you, Your Honor. Good afternoon, Your Honors. May it please the Court. I'm representing the defendant in this case, Marcus Northern. Mr. Northern was convicted in a jury trial of two counts of first-degree murder, felony murder based on attempt armed robbery, and knowledge murder. Specifically, the jury found that on January 10, 1999, the defendant was one of three individuals who stabbed Robert Blanks to death. The defendant was sentenced to the maximum non-extended term of 16 years' imprisonment. Three issues are raised on appeal. The first issue, the defendant maintains he was not proved guilty of murder beyond a reasonable doubt. He therefore asked this Court to reverse both of his convictions outright and vacate his sentence. Alternatively, in issue two, he seeks a new trial because he received ineffective assistance of trial counsel, where counsel failed to call two witnesses at trial, one of whom, based on her pretrial statements to police, apparently would have given exculpatory testimony, the other of whom, based on a mid-trial offer of proof, would have severely undermined the credibility of prosecution witness Sean Lewis. And as a final alternative in issue three, Mr. Northern asks for resentencing because although he received the maximum non-extended term, at sentencing the judge stated his erroneous belief that the defendant was actually eligible for an extended term. Now, in argument today, I intend to focus on issue one, the reasonable doubt argument. Of course, if your honors have questions about the other issues, I'd be happy to address those as well. Now, in making this argument, the defendant, of course, acknowledges the Collins standard, the rational trier of fact standard. And I think one of the principal rationales of that standard is that the trier of fact is present in the courtroom, has a chance to hear and see the witnesses testify, and therefore, at least hypothetically, is in a better position than the reviewing court to assess the credibility of the witnesses because the reviewing court is limited to the cold record. One of the unique aspects of this case, however, is that at the post-trial motion stage, the trial judge, although this was a jury trial, the trial judge commented on the evidence presented at trial and offered his opinion that most of the prosecution witnesses, principally three individuals he characterized as snitches, Courtney Smith, Christopher McAfee, and Sean Lewis, had been so impeached that they were unworthy of belief. Like the jury, the trial judge was, of course, present in the courtroom, had the chance to hear and listen to the witnesses testify. Now, these statements by the judge are not the linchpin of the defendant's reasonable doubt argument, but he submits that those statements can and should be considered by this court and that they bolster the defendant's argument that the record shows that these witnesses were not credible and therefore no rational trier of fact could have returned a guilty verdict in this case. The defendant also acknowledges that it is not up to this court to reweigh the evidence or to retry the defendant, but according to Illinois case law, when the defendant challenges the sufficiency of the evidence on appeal, the court, of course, must closely examine that evidence, and the jury's verdict is not insulated from appellate review as the state seems to suggest on appeal. Now, the evidence presented at trial in this case basically showed that on the night in question, three individuals entered the home of Robert Blanks and proceeded to stab him to death. As it so happens, four members of the victim's family were present in the home that evening, his wife and three children, and three of those individuals, his wife and two of the children, testified at trial. God bless you, Your Honor. None of the witnesses were able to positively identify any of the assailants, and none of the witnesses were able to point to Marcus Northern and say that he was one of them or was otherwise involved in this crime. Furthermore, there was no physical evidence. Time the defendant to the offense. There was a lot of blood evidence. There was a lot of blood both inside the house and outside the house, but according to the experts, none of it came from the defendant. All of it came from the victim, Mr. Blanks. There was no DNA evidence tying the defendant to the crime, no fingerprint evidence tying the defendant to the crime, and although there was snow on the ground outside the house, no footprint evidence tying the defendant to the crime. I mentioned earlier one of the offenses a defendant was convicted of was felony murder based on attempt armed robbery. There was no evidence that any property in the house was later found in the defendant's possession. In fact, there was no evidence that any property was taken from the home on the night in question, and none of the witnesses testified that any of the assailants either demanded property or even searched for property. In fact, based on this evidence or lack of evidence, the trial judge I think very logically stated that this appeared to be an execution. The assailants entered the home, asked about the whereabouts of the victim. They found him. They stabbed him. They left. Judge stated very logically this did not appear to be a failed robbery attempt, and these circumstances in and of themselves show, I think, that this jury may not have been a rational trier of fact given its guilty verdict as to the charge of felony murder. Furthermore, the defendant made no incriminating statements to the police, and there was no testimony from anyone admitting his or her involvement and also saying that the defendant was involved. So, of course, the question Your Honors may ask is what other evidence was presented in this case against Mr. Northern. Well, I've mentioned previously the judge's reference to the three so-called snitches, three individuals, Courtney Smith, Christopher McAfee, Sean Lewis, all testified as to their belief of the defendant's involvement. Defendants admits the record shows these various individuals were impeached, and in the end their testimony was not even all that probative. Smith, for example, testified that he and the victim were friends, that they were members of the same street gang, and that the defendant was a member of a rival gang. Smith testified that about a year after the murder, he had a run-in with the defendant in which the defendant made a statement to him, apparently referencing the street gang that Smith belonged to, saying something along the lines of, You all ain't got your murder game up to par. Smith testified that he interpreted the statement as an admission by the defendant that he had been involved in the murder of Robert Blanks. Defendants admits the statement was so vague, was so cryptic, that no rational trier of fact could find that it was an admission to anything, let alone an admission to his involvement in murder, let alone his admission to involvement in the murder of Robert Blanks. Now, evidence here was that about 10 years elapsed from the murder, which occurred in 1999, and the defendant's trial, which occurred in 2009. Christopher McAfee testified that somewhere around 2005, an acquaintance of his and the defendant's named Robert Johnson, who was later charged as a co-defendant in this case, was arrested on an unrelated federal charge. And McAfee claimed that at about that time he had a conversation with the defendant, in which defendant stated to McAfee that he was concerned that Johnson was the weak link and that federal authorities might bring pressure to bear on Johnson concerning the murder of Robert Blanks. Now, initially, this alleged statement doesn't really seem to ring true, because I don't understand why federal authorities might have any interest in the murder of Mr. Blanks. It was a state prosecution. It was a state crime from the very beginning, 10 years prior to the defendant's trial. It had to be foreseeable that it was a state crime and that if anyone would be charged, it would be a state prosecution. So why federal authorities would even be interested, I think, is an important question. Beyond that, however, just like the alleged statement made to Smith, this alleged statement to McAfee certainly falls far short of any admission on the defendant's part that he was involved in this crime. Now, Sean Lewis gave the most probative testimony, I suppose, of the three, because he claimed, and he's really the only one who claimed, that the defendant admitted to him that he was involved in this offense. He testified that a defendant was with him for an uninterrupted period of time between late January 1999, about three weeks after the murder, and mid-March 1999, when Lewis was arrested on an unrelated charge, and that during that period of time, the defendant allegedly told Lewis that he was involved in this crime. As a trial judge found, however, Lewis was impeached left and right. I think the trial judge said something like, Lewis, his testimony was impeached more than he gave unimpeached testimony. For example, he admitted he told the grand jury only that the defendant gave him semi-scenarios, and that he then put two and two together, which certainly is very different from his trial testimony that the defendant admitted involvement in the offense. He was also impeached by evidence that for at least a short period of time between late January and mid-March 1999, the defendant was back in the Quad Cities. Therefore, he could not have been with Lewis during the entire period of time Lewis claimed that he was in Memphis, Tennessee. In addition, like both Smith and McAfee, Lewis was a convicted felon. Like Smith, he was a gang member. Like Smith, he was in federal prison at the time of defendant's trial. And like Smith, he had entered into a proffer agreement whereby his sentence might be reduced if he gave authorities information leading to criminal convictions. In fact, he testified at trial that he was hopeful, not that he had a specific agreement, but he was certainly hopeful that his sentence might be reduced based on his testimony in this particular case. Did the defendant's trial attorney give the trial judge an opportunity to overturn the jury's verdict? Well, he did make a motion for a directed verdict both at the close of the state's case, again, at the close of all of the evidence introduced at trial. There was a post-trial motion which was litigated at length, although the post-trial motion was litigated by a different attorney and the primary allegations in the post-trial motion was that trial counsel had been ineffective. Oddly enough, there was not a reasonable doubt argument actually raised in the post-trial motion. In addition, my research shows, although frankly I was very surprised to find this, but my research shows that where there is a motion for a directed verdict, although the judge may disagree as to credibility, he can't take that away from the jury. And so I don't know. It appears to me from my research into the case law, a judge would not have had the authority. We can. I'm sorry? We can as an appellate court, but the trial judge cannot. That's what my research shows. Again, the defendant submits, though, that his comments are bolstered by the record in this case. All these witnesses, there were severe problems with their testimony. As I say, as far as Smith and McAfee, their testimony was hardly even probative, and the defendant submits no rational trier of fact could have returned a guilty verdict based on the testimony of these witnesses. Now, the judge also commented at the post-trial motion stage about the evidence introduced in this case, comparing it with the evidence introduced in co-defendant Robert Johnson's case. Thank you. Because Johnson was tried first, and Johnson was acquitted. And the judge said the difference between the two was evidence of defendant's conduct in the hours following the murder. And what he was talking about was testimony that about three hours after the attack on Blanks was reported to police, that the defendant showed up at an area hospital with a wound in his leg. Claimed that it was accidental, described the manner in which it occurred. Hospital personnel testified that it could not have occurred in that manner, and they also testified that the defendant gave a false name. Admittedly, suspicious conduct on the part of the defendant. Now, we know from, or at least the evidence suggests here, the defendant was a gang member. The PSI shows he had a criminal record. Maybe he was involved in other conduct he was trying to cover up that night. We just don't know from the record. Admittedly, suspicious conduct, but once again, not conduct tying into the crime. Now, if there had been evidence that one of the assailants had been injured, or if there had been blood from a person other than the victim at the scene, that might have made this evidence very corroborative, but there was no such evidence whatsoever. And so if you look at the suspicious conduct at the hospital, if you look at the testimony of each of these three witnesses that I have detailed, whether individually or cumulatively, they simply do not constitute evidence beyond a reasonable doubt. Each piece of evidence is very weak, and simply adding weak evidence to weak evidence does not all of a sudden transform the case into one that has been proved beyond a reasonable doubt. Clearly, conviction can't be sustained on guess, speculation, or conjecture, and I submit that's all the jury could have relied on in this case. None of the knives had been recovered at the time? No. No weapons were recovered. There was some testimony that at least one of the assailants had a gun. No indication that it was fired. No indication that it was recovered either. Each of the three assailants had a knife. There was at least one knife, right, and not recovered. Admittedly, it's a rare circumstance where the appellate court overturns in response to a challenged sufficiency of the evidence. I would submit to your honors respectfully that this is one of those cases that calls for reversal. The evidence just wasn't there beyond a reasonable doubt, and for these reasons Mr. Northern respectfully asks your honors to reverse both of his convictions outright and to vacate his sentence. Thank you. Thank you, your honors. Mr. Fisher and Ms. Duffy. Good afternoon, your honors. Counsel? Counsel reiterates this afternoon the closing argument that his defendant's attorney made to the jury in this case, and the jury didn't buy it, and they are the judges of the credibility of the witnesses and whether or not this defendant was guilty beyond a reasonable doubt. Now, counsel, today talks about the testimony of three witnesses, who I grant you are not exactly the most upstanding citizens in Rock Island County. We're dealing here with a victim who is a member of the Gangster Disciples and a defendant who is a member of the Vice Lords. That's what was going on here. Drugs, money, et cetera. There had been a lot of bad blood between those two groups for quite some time. There was testimony to that effect. The state in this case called 25 witnesses and submitted some 70-some exhibits, and while counsel admits that this defendant showed up at the hospital in the early morning hours after this murder took place and talked about, I have a wound I need to have treated, and gave a false name. Well, there were two doctors and a nurse that testified that he did give a false name, and the wound he was suffering from is a stab wound, definitely caused by a knife. He went to Davenport, too, didn't he? I'm sorry? He went to Iowa, actually, to get it treated, too, didn't he? Davenport, yes. He went to a cousin's house, and the cousin's girlfriend, he asked them for help, and they took him to the hospital in Davenport. When the defendant now, you know, whether this witness is wholly credible or not, that's not for us to judge. It's not for Mr. Fisher to judge. It's not for this court to judge. It was for the jury to judge. Mr. Lewis, Sean Lewis, testified that the defendant told him that he and two others had gone over to Mr. Blanks' home. They were looking to rob him of drugs. The defendant had a knife, and he is the one, he said, who stabbed Mr. Blanks. The autopsy showed that Mr. Blanks died from 30 to 32 stab wounds. He wasn't shot. The other two co-defendants apparently had guns as weapons. He was stabbed to death in front of his wife and three children. Now, I understand that three of these witnesses, at least two of whom, had made agreements with the federal government. I believe, if I'm not mistaken, that their testimony was they were incarcerated for drug offenses at the time in federal prisons, and they'd made agreements to testify in this case. Can they, in and of themselves, be relied upon exclusively? No. But what is important is that the testimony they gave is consistent with witnesses who have no reason to lie. Mr. Lewis related the story of the defendant telling him they went over to Blanks' home to steal drugs, and that the defendant stabbed Mr. Blanks. It went bad, and he stabbed Mr. Blanks. And in the process of doing so, he stabbed himself. That's consistent with the testimony of the doctors and the nurse at the hospital where the defendant went to be treated, where he gave a false name, and he lied about how the injury occurred. I reviewed somewhat more extensively in my brief the testimony of other witnesses at this trial. I think the judge's statement about the snitches does a disservice to some 20 witnesses in this trial. It wasn't just those snitches that testified. If that was the case, maybe this defendant wouldn't have been found guilty, but the fact remains he was found guilty by a jury. And while you may be able to dismiss part of those gentlemen's testimony, you can't dismiss it all. And I don't think the judge meant to say, look, if I had tried this case, I would have found this defendant not guilty. I think what he was saying was, I understand your argument that these witnesses lack some credibility, but what about the witnesses that don't lack any credibility? If it weren't for what the defendant did after this crime was committed, that circumstantial evidence is just as important as some other circumstantial evidence that goes to show his involvement in this murder. Is that what he said, the trial judge? What he just said, is that what he said? What he said was, in effect, I have a problem. There are snitches who testified here, and their credibility is nil. However, the people, and he specifically was referring to the doctors and the nurse who testified about the defendant showing up at the hospital with the stab wound, et cetera. Those people are credible witnesses. And if it weren't for their testimony, along with the other testimony that was admitted at trial, perhaps this defendant would have been found not guilty also.  This is the defendant's trial. His co-defendant was tried in another trial and found not guilty. And I think the evidence showed that Robert Johnson, while he was armed with a weapon, and is guilty under a theory of accountability perhaps, he didn't kill Robert Blanks. This defendant killed Robert Blanks. As far as the defendant's other two issues, I want to briefly touch on those. He alleges ineffective assistance of trial counsel for his failure to call two witnesses. This issue was raised post-trial. There was an evidentiary hearing on this. Trial counsel testified. Of those two witnesses, one of them he found to be not credible and determined that the testimony of one of the police officers would impeach his testimony if he told her to testify. The other witness, the defendant asked him not to call because he was afraid, as an ex-girlfriend, she'd turn on him and he didn't know what she was going to say. That decision, not to call those two witnesses, knowing of their existence and having talked to them, that's a matter of trial strategy that's immune from attack in an argument on ineffective assistance of counsel. As far as the sentencing issue is concerned, the trial judge was entitled to consider all of the defendant's prior convictions for purposes of imposing sentence. The fact that those prior convictions may have created a situation where the defendant was eligible or not for an extended-term sentence is irrelevant. They were admissible as aggravating factors, support the trial judge's imposition of a 60-year term. The defendant was not given an extended-term sentence. So whether or not there's a mistaken belief that he qualified for one under these circumstances is irrelevant. And that's all I have unless the Court has any other questions. I don't think so. Thank you very much, Ms. Duffy. And Mr. Fisher, any rebuttal? Thank you, Your Honor. Several points, if I may. The State, of course, argues that the jury heard the witnesses. Again, the defendant acknowledges the Collins standard, the rational trial-or-effect standard. According to Illinois case law, however, when a defendant challenges the sufficiency of the evidence on appeal, the fact that the jury may have found, apparently did find certain witnesses to be credible, does not require the appellate court to reach the same conclusion. It's important for this Court to look closely at each piece of evidence. Again, the jury's verdict is not insulated from review. This Court need not say a witness is credible simply because the jury may have or must have found that witness to be credible. State alleges that the judge's comments post-trial somehow did a disservice to the other 20 witnesses. I'm not sure I follow that argument. Yeah, there were numerous witnesses, but, of course, many of the witnesses were police investigators, hospital personnel whose credibility was not at issue in this case. The defendant's wife, I mentioned wife, two of the children testified their credibility was not really an issue in this case. Although, interestingly, the wife did speculate, apparently pre-trial, that she recognized the voice of one of the assailants, Van Williams, and she speculated as well to police prior to trial that another man, an Edward Rodin, may have been involved. But in any event, the case didn't really rise or fall on many of the witnesses presented by the state. And so the fact they called a lot of witnesses doesn't all of a sudden make it an overwhelming case. You have to look, of course, at specifically the probative value of the witness's testimony and see how the judge's comments in any way demeaned or did a disservice to other witnesses, the rest of the case that the state put on. State alleges that the defendant stabbed the victim and himself. Well, the state is speculating. It's pure speculation. Again, no testimony that any of the assailants were stabbed or otherwise injured. Is this possible? It's possible, but, again, a criminal conviction can't be based on possibility. It can't be based on speculation. That's really all the state had here, and that's all the state is really arguing today. Did one of the snitches say that? I'm sorry, Your Honor? Did one of the snitches say that? That they were speculating? Oh, well, Lewis did claim that the defendant claimed that he was involved in the attack and he suffered a wound in the course thereof. Sean Lewis said that. And for what it's worth, the judge found Lewis to be the most incredible. I think if I heard correctly, the state argued that these particular witnesses, the so-called snitches, didn't have any reasons to lie. Again, two of them had entered into proffer agreements, Smith and Lewis, whereby their sentence might be reduced if they gave information that would lead to criminal convictions. And Lewis testified he hoped that was the case. Smith, his friend was killed here, and he and the defendant were in a rival gang, so that would seem to give him a separate motivation. McAfee, I didn't mention this before, but McAfee testified that at one point he and the defendant were very good friends, but by the time of the trial, not such good friends because the defendant had apparently slept with McAfee's girlfriend. So in addition to gang members, convicted felons, and what have you, all of these witnesses had some bias, had some reason to lie, if that's what they chose to do in this case. Thank you, thank you. Also, the state says, well, clearly the defendant is the one who killed Blanks. A jury here was instructed on accountability, so I don't know that the state was even confident in the trial that the defendant struck any blows. In any event, you know, if this had been a civil suit, preponderance of the evidence, 51%, your honors probably know by now I don't like to concede anything, but I would submit to your honors, possibly 51%, you know, maybe reasonable doubt is much higher. It's a very severe burden for a good reason, and that burden, of course, was not carried in this case. So the defendant renews his respectful request that your honors overturn his convictions. Thank you. Thank you. And thank you both for your argument today. We will take this matter under advisement. We'll be back to you with a written disposition within a short time.